UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

**CRAIG CUNNINGHAM** on behalf of himself and all others similarly situated,

                    Plaintiff,

-vs.-

**BIG THINK CAPITAL INC.,**

                    Defendant.

Case No. 2:19-cv-00638-ILG-PK

**<u>MEMORANDUM OF LAW IN SUPPORT OF MOTION OF DEFENDANT BIG THINK CAPITAL INC. TO VACATE CERTIFICATE OF DEFAULT</u>**

# TABLE OF CONTENTS

**TABLE OF CONTENTS** ................................................................................................... i

**TABLE OF AUTHORITIES** ............................................................................................ ii

**I.     INTRODUCTION** ..................................................................................................1

**II.    FACTS** ....................................................................................................................1

**III.   LAW AND ARGUMENT** .....................................................................................3

      A.      Standard of Review. ....................................................................................3

      B.      Big Think's Default was not Willful. .........................................................4

      C.      There is No Prejudice to Cunningham .......................................................4

      D.      Big Think has Presented Evidence of a Meritorious Defense. ..................5

**IV.    CONCLUSION** ......................................................................................................8

**CERTIFICATE OF SERVICE** ......................................................................................10

# TABLE OF AUTHORITIES

**PAGE(S)**

**CASES**

*Burcham v. Expedia, Inc.*,
   No. 4:07 C 1963, 2009 U.S. Dist. LEXIS 17104, 2009 WL 586513
   (E.D. Mo. Mar. 6, 2009) ...................................................................................................7

*Enron Oil Corp. v. Diakuhara*,
   10 F.3d 90 (2d Cir. 1993) ................................................................................................3, 4

*Feldman v. Google, Inc.*,
   513 F.Supp.2d 229 (E.D. Pa. 2007) .....................................................................................7

*Global Gold Mining v. Ayvazian*,
   983 F. Supp. 2d 378 (S.D.N.Y. 2013) ..............................................................................4, 5

*Goldstein v. Urgo Eleuthera Hotels Ltd.*,
   No. CV 14-6395 (ADS)(ARL), 2016 U.S. Dist. LEXIS 17253
   (E.D.N.Y. Feb. 10, 2016) ....................................................................................................3

*Hancock v. AT&T Co.*,
   701 F.3d 1248 (10th Cir. 2012) ..........................................................................................7

*MD Produce Corp. v. 231 Food Corp.*,
   304 F.R.D. 107 (E.D.N.Y. 2014) ........................................................................................5

*Bricklayers & Allied Craftworkers Local 2 Pension Fund ex rel. O'Sick v.
   Moulton Masonry & Construction, LLC*,
   779 F.3d 182 (2d Cir. 2015) .............................................................................................3, 4

*Oliver v. TTC-Ameridial, LLC*,
   No. 16 C 5177, 2018 U.S. Dist. LEXIS 39748, 2018 WL 1255017
   (N.D. Ill. March 12, 2018) ..............................................................................................7, 8

*Sream Inc. v. Saakshi Enters. Inc.*,
   No. 16-CV-1408 (NG)(RML), 2017 U.S. Dist. LEXIS 93182,
   2017 WL 2633510 (E.D.N.Y. June 15, 2017) .................................................................3, 4

*Sullivan v. All Web Leads, Inc.*,
    No. 17 C 1307, 2017 U.S. Dist. LEXIS 84232 (N.D. Ill. June 1, 2017) ..............................7

*United States CFTC v. Safety Capital Mgmt.*,
   No. 15-CV-5551 (RJD)(PK), 2017 U.S. Dist. LEXIS 108123
   (E.D.N.Y. July 11, 2017) ...........................................................................................3, 4, 5

*Weisel v. Pischel*,
   197 F.R.D. 231 (E.D.N.Y. 2000) ............................................................................................5

*Winner v. Kohl's Dep't Stores, Inc.*,
   No. 16-1541, 2017 U.S. Dist. LEXIS 131225, 2017 WL 3535038
   (E.D. Pa. Aug. 17, 2017) .................................................................................................6, 7

**STATUTES/OTHER AUTHORITIES**

15 U.S.C. § 7001(c)(1)(C)(ii) .................................................................................................7

47 C.F.R. § 64.1200(a)(2) .......................................................................................................5

47 C.F.R. § 64.1200(f)(8)(i) ....................................................................................................6

Federal Rule of Civil Procedure 55(c) ....................................................................................3

In the Matter of Rules and Regulations Implementing the TCPA of 1991, 27 FCC
   Rcd. 1830 (F.C.C. Feb. 15, 2012) .......................................................................................6

I.  **INTRODUCTION**

On February 1, 2019, Plaintiff Craig Cunningham ("Cunningham") filed the Complaint on behalf of himself and a putative class alleging that Defendant Big Think Capital Inc. ("Big Think") violated the Telephone Consumer Protection Act ("TCPA") by calling and texting Mr. Cunningham's cell phone number ending in 7262 ("Phone Number") without prior express consent. Compl., Doc. 1, ¶¶ 13-14. Mr. Cunningham further alleges that "[u]pon information and belief," Big Think has violated the TCPA "thousands" of times in a similar manner. Compl., ¶ 16.

On July 8, 2019, Mr. Cunningham filed an Application for Certificate of Default by the Clerk (Doc. 9), and on July 15, 2019, the Clerk filed a Certificate of Default ("Certificate," Doc. 10). For the reasons addressed below, Big Think respectfully requests that the Court vacate the Certificate and allow Big Think fourteen days to file an Answer.

II.  **FACTS**

Big Think is a financial services marketplace that specializes in helping businesses find sources of financing. Declaration of David Brown ("Brown Declaration"), ¶ 2. One way in which Big Think identifies potential customers is through its website, https://bigthinkcapital.com. *Id.* at ¶ 3. A business interested in financing can visit the website, and click a link to "Apply Now." *Id.* at ¶ 4. After answering non-identifying questions, someone interested in that financing can fill out an online application ("Application"). *Id.* at ¶ 4 and Ex. 1. The Application has fields for name, company, phone number, and email address, and includes a consent to be contacted ("Consent"). *Id.* at ¶¶ 4-6 and Ex. 1. The Consent reads:

> By clicking 'Get Started or Apply Now', you (i) consent to receiving calls and messages, including autodialed calls for marketing purposes, from Big Think Capital or its representatives or agents at the telephone number provided above (including mobile telephone number), and acknowledge that no purchase of credit

or services is contingent upon such consent; and (ii) acknowledge that you have
read Big Think Capital's Application Agreement and Big Think Capital's Privacy
Policy and understand that you may opt out of receiving communications of your
choice from Big Think Capital as provided in the Privacy Policy.

*Id.* at ¶ 6 and Ex. 1.

On March 20, 2018, an individual submitted the Application, which identified the potential customer as Mr. Cunningham, a company name of Granite Enterprises, LLC, and the Phone Number. Brown Declaration, ¶ 7. To submit the Application, the individual would have to have clicked "Apply Now," an option that appears just below the Consent. *Id.* Big Think has no record of someone contacting Big Think to revoke consent or otherwise asking that the Phone Number not be contacted. *Id.* at ¶ 8.

On February 1, 2019, Mr. Cunningham filed the Complaint alleging that Big Think called the Phone Number on January 28, 2019 and sent a text message to the Phone Number on a unidentified date. Big Think's records do not reflect a telephone call to the Phone Number on January 28, 2019. Brown Declaration, ¶ 9.

On February 1, 2019, Mr. Cunningham filed the Complaint. Doc. 1. After being served with the Complaint, Big Think began the process of securing counsel. Brown Declaration, ¶ 10. On March 6, 2019, Mr. Cunningham's counsel agreed to allow Big Think until April 5, 2019 to respond to the Complaint. *Id.* at ¶ 11 and Ex 3.

Prior to April 5, 2019, Big Think began the process of retaining counsel. Brown Declaration ¶ 12. After April 19, 2019, Big Think learned that its chosen counsel was changing positions and, as a result, would no longer be able to represent Big Think in this case. *Id.*at ¶ 13.

In early July 2019, Big Think retained its current counsel, who immediately reached out to Plaintiff's counsel about the pending litigation. Declaration of Mendy Piekarski ("Piekarski Dec."), ¶¶ 2-3 and Ex. 1. At the same time, the undersigned began the process of changing law

firms, thus resulting in the delay between the undersigned's retention and filing of a notice of appearance. Piekarski Dec., ¶¶ 4-5.

## III. LAW AND ARGUMENT

### A. Standard of Review

"A litigant may seek to vacate an entry of default pursuant to Federal Rule of Civil Procedure 55(c), which provides that an entry of default may be set aside for 'good cause.'" *United States CFTC v. Safety Capital Mgmt.*, No. 15-CV-5551 (RJD)(PK), 2017 U.S. Dist. LEXIS 108123, at *4 (E.D.N.Y. July 11, 2017) (citing Fed. R. Civ. P. 55(c)). Three criteria must be considered in deciding whether to relieve a party from default: "'(1) whether the default was willful; (2) whether setting aside the default would prejudice the adversary; [and] (3) whether a meritorious defense is presented.'" *Id.* (quoting *Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 96 (2d Cir. 1993) and citing *Bricklayers & Allied Craftworkers Local 2 Pension Fund ex rel. O'Sick v. Moulton Masonry & Construction, LLC*, 779 F.3d 182, 186 (2d Cir. 2015)).

"When the question is one of setting aside a default – as opposed to a default judgment – these factors are assessed less rigorously, because there are fewer concerns about 'the concepts of finality and litigation repose.'" *United States CFTC*, at *4 (quoting *Enron Oil*, 10 F.3d at 96 and citing *Sream Inc. v. Saakshi Enters. Inc.*, No. 16-CV-1408 (NG)(RML), 2017 U.S. Dist. LEXIS 93182, 2017 WL 2633510, at *2 (E.D.N.Y. June 15, 2017)); *see also Goldstein v. Urgo Eleuthera Hotels Ltd.*, No. CV 14-6395 (ADS)(ARL), 2016 U.S. Dist. LEXIS 17253, at *3 (E.D.N.Y. Feb. 10, 2016) ("In this case, while the Clerk has entered a default, there is no default judgment. Under these circumstances, the Court decides the motion to vacate under the more lenient standard of Rule 55(c)."). Additionally, although the decision of vacating an entry of default is within the Court's discretion, "the Second Circuit maintains an 'oft-stated preference

for resolving disputes on the merits.'" *United States CFTC*, 2017 U.S. Dist. LEXIS 108123 at *5 (quoting *Enron Oil*, 10 F.3d at 96).

> B. <u>Big Think's Default was not Willful</u>.

In the context of a default, willfulness requires "'conduct that is more than merely negligent or careless, but is instead egregious and not satisfactorily explained.'" *United States CFTC*, 2017 U.S. Dist. LEXIS 108123 at * 5 (quoting *Bricklayers*, 779 F.3d at 186). Indeed, "[e]ven a defendant who was 'grossly negligent' in failing to answer was not necessarily willful; '[r]ather, the defaulting party must have engaged in deliberate or egregious conduct.'" *Id.* (quoting *Sream Inc.*, 2017 U.S. Dist. LEXIS 93182, 2017 WL 2633510, at *2).

Here, Big Think communicated with Mr. Cunningham's counsel in April 2019 and explained that Big Think was in the process of retaining counsel. Unfortunately, after April 19, 2019, Big Think learned that its chosen counsel was changing positions and, as a result, would no longer be able to represent Big Think in this case. Brown Declaration, ¶¶ 10-13. Big Think retained its current counsel in July 2019, and the undersigned promptly reached out to Mr. Cunningham's counsel about his representation of Big Think. On these facts, Big Think's default was not deliberate or egregious. Big Think's default was not willful. The Clerk's entry of default should be vacated.

> C. <u>There is No Prejudice to Cunningham</u>.

As this Court has recognized, "[w]hether the non-defaulting party would be prejudiced by vacating a default 'has been described as the single most persuasive reason' to deny a motion to vacate." *United States CFTC*, 2017 U.S. Dist. LEXIS 108123 at *6 (quoting *Global Gold Mining v. Ayvazian*, 983 F. Supp. 2d 378, 387 (S.D.N.Y. 2013)). To demonstrate prejudice, Mr. Cunningham "'must establish that delay will result in the loss of evidence, create increased

difficulties of discovery, or provide greater opportunity for fraud or collusion.'" *Id.* (quoting *Global Gold Mining*, 983 F. Supp. 2d at 388)).

Here, vacating the clerk's entry of default will not result in a loss of evidence, a greater likelihood for fraud or collusion, or difficulties in obtaining discovery. Because there will be no prejudice to Mr. Cunningham, the Court should vacate the Clerk's entry of default.

        D. <u>Big Think has Presented Evidence of a Meritorious Defense.</u>

"A defendant seeking to vacate a default 'need only meet a low threshold to satisfy [the meritorious defense] factor.'" *United States CFTC*, 2017 U.S. Dist. LEXIS 108123 at *7 (quoting *MD Produce Corp. v. 231 Food Corp.*, 304 F.R.D. 107, 110 (E.D.N.Y. 2014)). Likelihood of success is not required – instead, the defense is meritorious if it gives the finder of fact "some determination to make." *Id.* (quoting *Weisel v. Pischel*, 197 F.R.D. 231, 239 (E.D.N.Y. 2000)). The moving party's "allegations are meritorious if they contain even a hint of a suggestion which, if proven at trial, would constitute a complete defense.'" *Id.* Big Think has demonstrated the existence of a meritorious defense.

The TCPA's implementing regulation provides, in relevant part, that it is unlawful to "[i]nitiate, or cause to be initiated, any telephone call that includes or introduces an advertisement or constitutes telemarketing, using an automatic telephone dialing system or an artificial or prerecorded voice, to [a cell phone], other than a call made with the prior express written consent of the called party[.]" 47 C.F.R. § 64.1200(a)(2). The regulation also says that "prior express written consent" requires a written agreement bearing the telephone number for which consent is given bearing the signature of the person called that authorizes the seller to deliver telemarketing messages using an ATDS. *Id.* at 64.1200(f)(8).

The written agreement is required to clearly and conspicuously inform the person signing that by executing the agreement, they are authorizing the seller to deliver telemarketing message using an ATDS, and the person is not required to agree to telemarketing messages as a condition of purchasing any property, goods, or services. 47 C.F.R. § 64.1200(f)(8)(i). "The term 'signature' shall include an electronic or digital form of signature, to the extent that such form of signature is recognized as a valid signature under applicable federal law or state contract law." *Id.* at § 64.1200(f)(8)(ii).

In 2012, the FCC clarified that "'consent obtained in compliance with the E-SIGN Act will satisfy the requirements of our revised rule, including permission obtained via an email, website form, text message, telephone keypress, or voice recording.'" *Winner v. Kohl's Dep't Stores, Inc.*, No. 16-1541, 2017 U.S. Dist. LEXIS 131225 at *14, 2017 WL 3535038 (E.D. Pa. Aug. 17, 2017) (quoting In the Matter of Rules and Regulations Implementing the TCPA of 1991, 27 FCC Rcd. 1830, 1844 ¶ 34 (F.C.C. Feb. 15, 2012) ("2012 Order")). The E-Sign Act states that if information is required to be given in writing, the use of an electronic record to provide that information is sufficient if: (i) the consumer affirmatively consented and has not withdrawn that consent; (ii) prior to consenting, the consumer is provided with a clear and conspicuous statement informing the consumer of the right to withdraw consent, whether the consent applies to the particular transaction or to identified categories of records that may be made available during the parties' relationship, and describing the procedures the consumer must use to withdraw consent; (iii) prior to consenting, the consumer is provided with a statement of the hardware and software requirements for access to and retention of electronic records; and (iv) the consumer "consents, electronically, or confirms his or her consent electronically, in a manner that reasonably demonstrates that the consumer can access information in the electronic form

that will be used to provide the information that is the subject of the consent[.]" 15 U.S.C. § 7001(c)(1)(C)(ii). *See also Winner*, 2017 U.S. Dist. LEXIS 131225 at *17-19.

When evaluating whether an online consent agreement constitutes "prior express written consent" for the purposes of the TCPA, courts have analyzed the enforceability of such agreements under general contract law. *See Sullivan v. All Web Leads, Inc*., No. 17 C 1307, 2017 U.S. Dist. LEXIS 84232, at *19-20, 2017 WL 2378079 (N.D. Ill. June 1, 2017) (*comparing Hancock v. AT&T Co*., 701 F.3d 1248, 1256 (10th Cir. 2012) (enforcing a clickwrap agreement whose terms were displayed in a scrollable text box and underneath it were buttons labeled "Exit Registration," "I Reject," and "I Agree"); *Burcham v. Expedia, Inc*., No. 4:07 C 1963, 2009 U.S. Dist. LEXIS 17104, 2009 WL 586513, at *1, 3 (E.D. Mo. Mar. 6, 2009) (finding a valid clickwrap agreement where a "Continue" button led to a page that stated "By continuing on you agree to the following terms and conditions," provided the terms and conditions, and included a clickable box stating "I agree to the terms and conditions"); *and Feldman v. Google, Inc*., 513 F.Supp.2d 229, 236 (E.D. Pa. 2007) (finding reasonable notice of a clickwrap agreement where users did not need to scroll down to a submerged screen to see the terms, and "a prominent admonition in boldface to read the terms and conditions . . . and with instruction to indicate assent" made the text of the agreement immediately visible to users)).

For example, in *Oliver v. TTC-Ameridial, LLC*, No. 16 C 5177, 2018 U.S. Dist. LEXIS 39748, 2018 WL 1255017 (N.D. Ill. March 12, 2018), the plaintiff, who was preparing to graduate college, entered her name, mailing address, e-mail address, and phone number into a site that offered information about opportunities in higher education. *Id.* at *2. The following disclosure was featured prominently on the site: "By checking this box, I expressly agree to receive marketing phone calls, text or SMS messages, or emails, from online-edu-help.com or

*Marketing Partners at any phone number I provide, even if the number is a wireless number . . . I understand that such calls may be placed using automatic dialing equipment or pre-recorded messages, and that I am not required to check this box to purchase any goods or services." *Id.* at *2-3. The plaintiff checked the box. *Id.* The parties did not dispute that this language met the "clear and conspicuous" standard set forth in the TCPA. *Id.* at *5. Thus, in finding that the defendant was entitled to summary judgment on the plaintiff's TCPA claim, the court held that, through this act, the plaintiff "provided 'prior written express consent' for [the defendant] to make telemarketing calls to her; no reasonable jury could find otherwise." *Id.* at *12.

Here, Mr. Cunningham was provided with a conspicuous written notice that by clicking to apply, he was consenting to receiving autodialed calls for marketing purposes, including to his cell phone, that no purchase of credit or services was contingent upon his consent, and that he understood that he may opt out of receiving the messages. By clicking "Apply Now," Mr. Cunningham provided prior express written consent to be contacted on his cell phone pursuant to the TCPA.

Because Mr. Cunningham provided prior express written consent to be called pursuant to the TCPA, Big Think has a meritorious defense. The Clerk's Entry of default should be vacated so that this matter can be considered on the merits.

## IV. CONCLUSION

Big Think's default was not willful, setting aside the Clerk's entry of default will not prejudice Mr. Cunningham, and Big Think has presented evidence that it has a meritorious defense. Applying the lower threshold required to vacate a Clerk's entry of default (as opposed to vacating a default judgment), Big Think has demonstrated the right to the relief requested. Big

Think respectfully requests that the Court vacate the Certificate and allow Big Think fourteen days to respond to the Complaint.

Dated: August 15, 2019                        Respectfully submitted,

                                              THOMPSON HINE LLP

                                    By:       /s/Mendy Piekarski
                                              Mendy Piekarski
                                              335 Madison Avenue, 12th Floor
                                              New York, New York 10017-4611
                                              Tel. (212) 344-5680
                                              Fax (212) 344-6101
                                              Mendy.Piekarski@thompsonhine.com

                                              *Attorneys for Defendant*
                                              *Big Think Capital, Inc.*

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

**CRAIG CUNNINGHAM** on behalf of himself and all others similarly situated,

                Plaintiff,

-vs.-

**BIG THINK CAPITAL INC.,**

                Defendant.

Case No. 2:19-cv-00638-ILG-PK

**Judge I. Leo Glasser**
**Magistrate Judge Peggy Kuo**

## CERTIFICATE OF SERVICE

I hereby certify that on August 15, 2019, I served a Notice of Motion of Defendant Big Think Capital Inc. to Vacate Certificate of Default, Memorandum of Law in Support of Motion of Defendant Big Think Capital Inc. to Vacate Certificate of Default, Declaration of David Brown with exhibits 1 and 2 annexed thereto and Declaration of Mendy Piekarski with exhibit 1 annexed thereto by email and first class mail enclosed in a security sealed postage-paid envelope addressed to the following at the last known address as follows:

Aytan Y. Bellin
BELLIN & ASSOCIATES LLC
50 Main Street
Suite 1000
White Plains, NY 10606
aytan.bellin@bellinlaw.com
*Attorneys for Plaintiff*

                                                 /s/ Dwayne Lunde
                                                 Dwayne Lunde