UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

Case No. 2:19-cv-00638-ILG-PK

**CRAIG CUNNINGHAM** on behalf of himself and
all others similarly situated,

        Plaintiff,

-vs.-

**BIG THINK CAPITAL INC.,**

        Defendant.

# DEFENDANT BIG THINK CAPITAL INC.'S MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION TO AMEND COMPLAINT

Mendy Piekarski
THOMPSON HINE LLP
335 Madison Avenue, 12th Floor
New York, New York 10017-4611
T: 212-344-5680 / F: 212-344-6101
Mendy.Piekarski@ThompsonHine.com

*Attorneys for Defendant*
*Big Think Capital Inc.*

# TABLE OF CONTENTS

**TABLE OF CONTENTS** ...................................................................................................... ii

**TABLE OF AUTHORITIES** ............................................................................................... iii

**I.     FACTS**. ........................................................................................................................1

**II.    LAW AND ARGUMENT**. .........................................................................................4

      A.      The Motion should be denied because it was filed in bad faith. .............................4

      B.      Allowing the amendment would be futile. ..............................................................6

            1.      The PFAC is an improper attempt at claim splitting. .................................6

            2.      The PFAC's claims are inherently individualized and cannot
be asserted on a classwide basis. ................................................................8

            3.      The class pled in the PFAC is an improper fail-safe class. .......................10

      C.      If the Motion is granted, the amendment should not relate back
to when the Complaint was filed. ..........................................................................11

**III.   CONCLUSION** ..........................................................................................................12

**CERTIFICATE OF COMPLIANCE** .................................................................................13

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Bank v. Indep. Energy Grp. LLC*,
  No. 12-CV-1369, 2014 U.S. Dist. LEXIS 141141, 2014 WL 4954618
  (E.D.N.Y. Oct. 2, 2014) ................................................................................................9

*Bank v. Spark Energy, LLC*,
  No. 19-CV-04478 (PKC) (LB), 2020 U.S. Dist. LEXIS 219352, 2020 WL
  6873436 (E.D.N.Y., Nov. 23, 2020) ................................................................................4

*Bargsley v. United States*,
  120 Fed. Cl. 619 (2015) ..................................................................................................8

*Best v. Barbarotta*,
  No. 12-CV-6218 (NGG), 2016 U.S. Dist. LEXIS 52290 (E.D.N.Y. Apr. 15,
  2016) ...............................................................................................................................7

*Curtis v. Citibank, N.A.*,
  226 F.3d 133 (2d Cir. 2000) ........................................................................................6, 7

*In re DDAVP Indirect Purchaser Antitrust Litig. v. Ferring Pharms. Inc.*,
  903 F. Supp. 2d 198 (S.D.N.Y. 2012) ............................................................................4

*In re Gen. Elec. Co. Sec. Litig.*
  No. 09-CV-1951 (DLC), 2012 U.S. Dist. LEXIS 100584, 2012 WL 2892376
  (S.D.N.Y. July 12, 2012) ................................................................................................5

*Genenbacher v. CenturyTel Fiber Co. II*,
  244 F.R.D. 485 (C.D. Ill. 2007) ....................................................................................11

*General Telephone Co. of Southwest v. Falcon*,
  457 U.S. 147 (1982) ........................................................................................................8

*Glatt v. Fox. Searchlight Pictures, Inc.*,
  811 F.3d 528 (2d Cir. 2016) ............................................................................................9

*Hicks v. T.L. Cannon Corp.*,
  35 F. Supp. 3d 329 (W.D.N.Y. 2014) ...........................................................................11

*Hom Sui Ching v. United States*,
  298 F.3d 174 (2d Cir. 2002) ............................................................................................4

*Hunter v. Time Warner Cable Inc.*,
   No. 15-CV-6445 (JPO), 2019 U.S. Dist. LEXIS 137495, 2019 WL 3812063
   (S.D.N.Y. Aug. 14, 2019) ...................................................................................................10

*James v. AT&T Corp.*,
   334 F. Supp. 2d 410 (S.D.N.Y. 2004)..................................................................................8

*JWD Auto., Inc. v. DJM Advisory Group LLC*,
   218 F. Supp. 3d 1335 (M.D. Fla. 2016)..............................................................................10

*Kanciper v. Suffolk Cry. Soc'y for the Prevention of Cruelty to Animals, Inc.*,
   722 F.3d 88 (2d Cir. 2013)....................................................................................................7

*Klay v. Humana, Inc.*,
   382 F.3d 1241 (11th Cir. 2004) ............................................................................................9

*Lindsay Transmission, LLC v. Office Depot, Inc.*,
   2013 U.S. Dist. LEXIS 9554 (E.D. Mo. Jan. 24, 2013).................................................10, 11

*Manney v. Reichert*,
   No. 13 CV 4413 (SJF)(GRB), 2014 U.S. Dist. LEXIS 137715 (E.D.N.Y. Sep.
   26, 2014) ..............................................................................................................................5

*Min Jin v. Metro. Life Ins. Co.*,
   310 F.3d 84 (2d Cir. 2002)....................................................................................................4

*Morency v. Vill. of Lynbrook P.O. Shield No. 217*,
   1 F. Supp. 3d 58 (E.D.N.Y. 2014) ....................................................................................7, 8

*In re Motors Liquidation Co.*,
   447 B.R. 150 (Bankr. S.D.N.Y. 2011)..................................................................................9

*Oneida Indian Nation v. County of Oneida*,
   199 F.R.D. 61 (N.D.N.Y. 2000)........................................................................................5, 6

*Randleman v. Fidelity Nat'l Title Ins. Co.*,
   646 F.3d 347 (6th Cir. 2011) ..............................................................................................10

*Rumbough v. Comenity Capital Bank*,
   No. 6:17-cv-956-Orl-18GJK, 2017 U.S. Dist. LEXIS 231277 (M.D. Fla. Nov.
   6, 2017) .............................................................................................................................7, 8

*Sauter v. CVS Pharm., Inc.*,
   No. 2:13-cv-846, 2014 U.S. Dist. LEXIS 63122 (S.D. Ohio May 7, 2014).................10, 11

*Stinson v. Pearson*,
   No. 1:20-CV-8701 (LLS), 2021 U.S. Dist. LEXIS 45776 (S.D.N.Y. Mar. 10,
   2021) .....................................................................................................................................7

*Zephyr Aviation III, L.L.C. v. Keytech Ltd.*,
 No. 8:07-CV-227-T-27TGW, 2008 WL 759095 (M.D. Fla. Mar. 20, 2008) ............................7

**Statutes/Other Authorities**

47 U.S.C. § 227(c) ...............................................................................................................11

47 U.S.C. § 227(c)(5) .........................................................................................................5, 11

47 C.F.R. § 64.1200(c)(2) ....................................................................................................5, 9

Fed. R. Civ. P. 15(c)(1)(B) ......................................................................................................12

## I. FACTS

On February 1, 2019, Plaintiff Craig Cunningham ("Cunningham") filed the Complaint (Dkt. No. 1) alleging that on January 28, 2019, Defendant Big Think Capital Inc. ("Big Think") violated the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227(b), by using an automatic telephone dialing system ("ATDS") to call Cunningham's cell phone with a number ending in 1977 ("1977 Number") without Cunningham's consent (Doc. 1, ¶ 13). Because the TCPA has a four (4) year statute of limitations, the Complaint sought to assert claims on behalf of Cunningham and a putative class of individuals who received calls from Big Think using an ATDS February 1, 2015 to the present (Doc. 1, ¶¶ 2, 16, 18).

On March 6, 2020, Big Think served its first set of written discovery. Declaration of Mendy Piekarski ("Piekarski Dec.," ¶ 2). Because the parties were attempting to reach a settlement, Cunningham responded to Requests for Admission, but did not otherwise respond to the discovery requests. (*Id.* at ¶ 3). On June 12, 2020, this case was stayed pending the Supreme Court's decision in *Barr v. Am. Ass'n of Pol. Consultants*, 19-631 (U.S. Jan. 10, 2020). The case was stayed again on August 4, 2020 pending the Supreme Court's decision in *Facebook, Inc. v. Duguid*, 19-511.

Although this case was stayed, Cunningham's litigation activity against Big Think was not. In September 2020, Cunningham filed a Complaint in the Eastern District of Texas ("Texas Case"). (Piekarski Dec., ¶ 4 and Ex. 2). The Texas Case was not a class action, and alleged that Big Think violated the TCPA by calling Cunningham on two different phones numbers, the 1977 Number and another ending in 7262 ("7262 Number"), using an ATDS (Piekarski Dec. Ex. 2 at ¶¶ 1-5); and (ii) by engaging in telephone solicitations while not having policies and procedures for maintaining a do not call list (*id.* at ¶¶ 6-10). On December 23, 2020, Cunningham filed a Motion for Default Judgment in the Texas Case, seeking a judgment for calls to the 7262 Number

made as early as March 13, 2020 (*i.e.*, before this case was ever stayed). (Piekarski Dec., ¶ 5 and Ex. 3). On February 25, 2021, Big Think filed a Motion to Vacate Entry of Default, explaining that they had a meritorious defense because the Eastern District of Texas has held that the provision of the TCPA prohibiting calls to numbers on the national do-not-call registry ("DNC Registry") does not apply to cell phones and the TCPA was unconstitutional from 2015 to 2020. (Piekarski Dec., ¶ 6 and Ex. 4). Cunningham voluntarily dismissed the Texas Case on May 4, 2021. (Piekarski Dec., ¶¶ 7-8 and Ex. 5-6).

In December 2020, Cunningham filed a Complaint in the Southern District of New York ("Second New York Case") that was essentially identical to the Texas Case. (Piekarski Dec., ¶ 9 and Ex. 7). After the court asked Cunningham to explain why the case should not be transferred to this District, Cunningham claimed that transferring the case would violate his "right to due process essentially forcing the Plaintiff to be represented when the Plaintiff wishes to bring a case pro-se and forces the Plaintiff into bringing a lawsuit as a class action when the Plaintiff has no desire to do so." (Piekarski Dec., ¶¶ 10-11 and Ex. 8-9). On April 23, 2021, the Second New York Case was transferred to this District and is now captioned *Cunningham v. Big Think Capital Inc., et al.*, E.D.N.Y. No. 2:21-cv-02443-GRB-ARL. (Piekarski Dec., ¶ 12 and Ex. 10).

On April 1, 2021, the Supreme Court issued its decision in *Duguid*, narrowing the definition of an ATDS. *Facebook, Inc. v. Duguid*, 141 S. Ct. 1163, 1167, 209 L. Ed. 2d 272 (Apr. 1, 2021). As a result of the decision, on April 20, 2021, Cunningham filed yet another class action Complaint against Big Think in *Cunningham v. Big Think Capital Inc.*, E.D.N.Y. No. 2:21-cv-02162 ("Third New York Case"), alleging that Big Think violated the TCPA by making calls to the 1977 Number using an automated or prerecorded voice beginning on or about June 13, 2018

(*i.e.*, over seven (7) months *before* the calls alleged in the original Complaint in this case). (Piekarski Dec., ¶ 13 and Ex. 11).

On May 10, 2021, Cunningham filed the Motion to Amend Complaint, including the Proposed First Amended Complaint ("PFAC"). (Docs. 32-35). In the Memorandum of Law in Support, Cunningham acknowledges that given the holding in *Duguid*, it is unlikely that Big Think used an ATDS to call him and, as a result, the claims in the Complaint presumably fail: "because Mr. Cunningham believes that it is unlikely that the device that Big Think used to send its January 28, 2019 [text message] to Mr. Cunningham did not have the capacity to generate random or sequential telephone numbers, Mr. Cunningham proposes to amend the Complaint to make individual and class claims under 47 U.S.C. § 227(c)(5) and 47 C.F.R. § 64.1200(c)(2)." Doc. 35, p. 6. The Memorandum of Law claims that amendment is appropriate because Cunningham "can make a viable claim under § 227(c)(5)." Doc. 35, p. 1.

The Motion does not mention that: (i) the phone number that Big Think allegedly called in violation of § 227(c)(5) (*i.e.*, the 7262 Number) is *a different number* than that set forth in the Complaint; (ii) Cunningham already has claims pending against Big Think in this District for calls to the 7262 Number; (iii) Cunningham attempted to avoid having the Second New York Case transferred to this District by arguing that he had no interest in asserting those claims as a class action; and (iv) after realizing that the claims in the Complaint were no longer viable, Cunningham initiated the Third New York Case for calls to the 1977 Number.

The PFAC seeks to assert claims on behalf of the following putative class:

All persons in the United States, from February 1, 2015 through the date of the filing of the instant First Amended Complaint to whom Defendant initiated or caused to be initiated two or more calls within a 12 month period – without having received prior express written consent from the called parties who had previously registered their telephone numbers on the national do-not-call registry maintained by the FCC – that delivered voice or text messages that were identical or

substantially similar to the above-described messages Defendant delivered to Plaintiff's cell phone.

Doc. 34, p. 6-7.

For the reasons set forth below, the Motion should be denied.

**II.     LAW AND ARGUMENT**

Although Rule 15(a)(2) provides that leave to amend should be freely given when justice so requires, the Court "has the discretion to deny leave if there is a good reason for it, such as futility, bad faith, undue delay, or undue prejudice to the opposing party." *Min Jin v. Metro. Life Ins. Co.*, 310 F.3d 84, 101 (2d Cir. 2002); *Hom Sui Ching v. United States*, 298 F.3d 174, 180 (2d Cir. 2002) ("[T]he district court may deny that leave where necessary to thwart tactics that are dilatory, unfairly prejudicial or otherwise abusive."); *Bank v. Spark Energy, LLC*, No. 19-CV-04478 (PKC) (LB), 2020 U.S. Dist. LEXIS 219352, at *4, 2020 WL 6873436 (E.D.N.Y., Nov. 23, 2020). This discretion safeguards against the possibility that Rule 15's amendment procedures will be exploited by petitioners for the purpose of undermining the rules designed to prevent abuse, regardless of the procedural posture of the case at the time the motion to amend is filed. *Hom Sui Ching*, 298 F.3d at 180. "In exercising its discretion, a district court must bear in mind that the overall goal is 'to secure the just, speedy, and inexpensive determination of every action.'" *Bank*, 2020 U.S. Dist. LEXIS 219352, at *4-5.

A motion for leave to amend should be denied when allowing such an amendment would be futile. *In re DDAVP Indirect Purchaser Antitrust Litig. v. Ferring Pharms. Inc.*, 903 F. Supp. 2d 198, 209 (S.D.N.Y. 2012).  Applying this standard to the Motion demonstrates that the Motion should be denied for multiple reasons.

      A.  <u>The Motion should be denied because it was filed in bad faith</u>.

Bad faith exists when a party seeks leave to amend solely to gain a tactical advantage. *Oneida Indian Nation v. County of Oneida*, 199 F.R.D. 61, 80 (N.D.N.Y. 2000). *See In re Gen. Elec. Co. Sec. Litig.* No. 09-CV-1951 (DLC), 2012 U.S. Dist. LEXIS 100584, 2012 WL 2892376, at *4 (S.D.N.Y. July 12, 2012) (a court may find bad faith where the plaintiff deliberately waited to see how his or her original claims would fare before seeking leave to amend); *Manney v. Reichert*, No. 13 CV 4413 (SJF)(GRB), 2014 U.S. Dist. LEXIS 137715, at *36-38 (E.D.N.Y. Sep. 26, 2014) (finding "bad faith gamesmanship" where plaintiffs sought amendment in one case to gain a tactical advantage when they "could have, and should have, moved in the [other] Action").

Here, the Motion seems to acknowledge that the Supreme Court's decision in *Duguid* defeated the entire theory on which this case was premised and was forthright about the fact that Cunningham seeks to amend the Complaint to assert a viable claim. Specifically, the Motion states "because Mr. Cunningham believes that it is unlikely [after *Duguid*] that the device that Big Think used to send its January 28, 2019 [text message] to Mr. Cunningham did not have the capacity to generate random or sequential telephone numbers, Mr. Cunningham proposes to amend the Complaint to make individual and class claims under 47 U.S.C. § 227(c)(5) and 47 C.F.R. § 64.1200(c)(2)." Doc. 35, p. 6. However, there are discrepancies between the changes described in the Motion and those that are identified by examining the PFAC. Those crucial discrepancies obscure the true nature and extent of the actual changes.

The original Complaint alleged that Big Think violated the TCPA in January 2019 by calling the 1977 Number using an ATDS without prior express consent. (Doc. 1, ¶ 13). The PFAC seeks to allege that Big Think violated the TCPA in December 2020 by calling the 7262 Number without prior express consent while the 7262 Number was on the DNC Registry. (Doc. 34, p. 5, ¶¶ 10-13). Those allegations are not an amendment to the Complaint but a new lawsuit altogether.

The decision in *Duguid* narrowed the definition of an ATDS, leaving Cunningham desperate to save this putative class action. Seeking leave to "amend" to actually assert a new lawsuit altogether, especially when the litigant was aware of the alleged violation as early as March 2020, is the precise attempt to seek a "tactical advantage" that constitutes bad faith. *Oneida Indian Nation*, 199 F.R.D. at 80. The PFAC is merely an attempt to save a class action lawsuit.

Moreover, neither the PFAC nor the Motion mentions that Cunningham has claims pending against Big Think in this District based on calls to the 7262 Number that were allegedly made without prior express consent, or that following the Supreme Court's decision in *Duguid*, Cunningham filed another class action against Big Think in this District based on calls allegedly made to the 1977 Number using an artificial or prerecorded voice.[1]

Not only is this the type of gamesmanship for which amendment is improper, but it constitutes bad faith. The Motion should be denied.

### B. Allowing the amendment would be futile.

#### 1. The PFAC is an improper attempt at claim splitting.

The PFAC seeks to assert claims on behalf of Cunningham and a putative class of individuals who received calls from 2015 to the present while their cell phone numbers were registered on the DNC Registry. Because this claim is barred, at least in part, by the claim splitting doctrine, amendment would be futile, and the Motion should be denied.

When presented with a "suit that is duplicative of another federal court suit," a district court "may stay or dismiss [that] suit." *Curtis v. Citibank, N.A.*, 226 F.3d 133, 138 (2d Cir. 2000). Commonly referred to as the "claim splitting doctrine," this doctrine provides that a plaintiff

---

[1] Big Think can only assume that Cunningham filed the Third New York Case because seeking leave to amend the Complaint in this case two years after the case was filed to allege a TCPA violation that predated the calls alleged in the Complaint would be the epitome of undue delay.

generally has "no right to maintain two separate actions involving the same subject matter at the same time in the same court against the same defendant." *Best v. Barbarotta*, No. 12-CV-6218 (NGG), 2016 U.S. Dist. LEXIS 52290, at \*9 (E.D.N.Y. Apr. 15, 2016) (internal quotations omitted) (quoting *Kanciper v. Suffolk Cry. Soc'y for the Prevention of Cruelty to Animals, Inc.*, 722 F.3d 88, 92, (2d Cir. 2013)); *see also Stinson v. Pearson*, No. 1:20-CV-8701 (LLS), 2021 U.S. Dist. LEXIS 45776, at \*11-12 (S.D.N.Y. Mar. 10, 2021). The doctrine "'allows district courts to manage their docket and dispense with duplicative litigation by dismissing the later of two actions when [a] plaintiff had previously filed related claims that were pending in the same federal court against the same defendants." *Best*, 2016 U.S. Dist. LEXIS, at \*9 (internal quotations omitted).

"The claim-splitting doctrine applies where a second suit has been filed before the first suit has reached a final judgment." *Rumbough v. Comenity Capital Bank*, No. 6:17-cv-956-Orl-18GJK, 2017 U.S. Dist. LEXIS 231277, at \*13 (M.D. Fla. Nov. 6, 2017) (internal quotations omitted) (quoting *Zephyr Aviation III, L.L.C. v. Keytech Ltd.*, No. 8:07-CV-227-T-27TGW, 2008 WL 759095, at \*6 (M.D. Fla. Mar. 20, 2008)). The doctrine requires a plaintiff to assert his claims arising from one set of facts in one lawsuit because "[b]y spreading claims around in multiple lawsuits[,] . . . parties waste 'scarce judicial resources' and undermine 'the efficient and comprehensive disposition of cases.'" *Rumbough*, 2017 U.S. Dist. LEXIS 231277, at \*13-14.

The claim-splitting doctrine ensures that a plaintiff may not split up his demand and prosecute it piecemeal, or present only a portion of the grounds upon which relief is sought and leave the rest to be presented in a second suit if the first fails. *Morency v. Vill. of Lynbrook P.O. Shield No. 217*, 1 F. Supp. 3d 58, 62 (E.D.N.Y. 2014). "'The complex problems that can arise from multiple federal filings do not lend themselves to a rigid test, but require instead that the district court consider the equities of the situation when exercising its discretion.'" *Id.* at 61 (quoting *Curtis*

*v. Citibank, N.A.*, 226 F.3d 133, 138 (2d Cir. 2000)). Although there is no precise rule, "'the general principle is to avoid duplicative litigation.'" *Morency*, 1 F. Supp. 3d at 61 (quoting *James v. AT&T Corp.*, 334 F. Supp. 2d 410, 411 (S.D.N.Y. 2004)). Courts have applied the claim splitting doctrine to dismiss duplicative TCPA lawsuits. For example, in *Rumbough v. Comenity Capital Bank*, No. 6:17-cv-956-Orl-18GJK, 2017 U.S. Dist. LEXIS 231277, at *15-16 (M.D. Fla. Nov. 6, 2017), the court dismissed the plaintiff's second TCPA lawsuit against the same defendant because "the claims that [plaintiff] assert[ed] in both *Rumbough I* and *Rumbough II* [were] based on the same nucleus of operative facts" and "related in time, origin, and motivation." *Id.* at 16.

Here, the PFAC's sole claim would allege that Big Think violated the TCPA by calling Cunningham when the 7262 Number was registered on the DNC Registry. It is beyond dispute that this case and the Second New York Case involve the same parties, they are pending in the same Court, and they both allege TCPA violations based on calls to the 7262 Number. Although the PFAC alleges calls in and after December 2020 (the last date of the calls set forth in the Second New York Case), the PFAC seeks to assert claims for calls from 2015 to the present (i.e., the same calls at issue in the Second New York Case). Because the claims in the PFAC would be barred by the claim splitting doctrine, amendment would be futile, and the Motion should be denied.

2. The PFAC's claims are inherently individualized and cannot be asserted on a classwide basis.

Though federal courts traditionally consider whether classwide treatment is appropriate at the certification stage, the inability to certify a class is sometimes "plain enough from the pleadings" that discovery is not necessary to determine the merits of class certification. *General Telephone Co. of Southwest v. Falcon*, 457 U.S. 147, 160 (1982). Where pleadings are plain enough that class certification would be futile, federal courts may deny class certification even before the plaintiff files a motion requesting certification. *Bargsley v. United States*, 120 Fed. Cl.

619, 625 n.6 (2015) (collecting cases). For example, if the "plaintiffs must introduce a great deal of individualized proof or argue a number of individualized legal points to establish most or all of the elements of their individual claims, such claims are not suitable for class certification." *In re Motors Liquidation Co.*, 447 B.R. 150, 159 (Bankr. S.D.N.Y. 2011); *Klay v. Humana, Inc.*, 382 F.3d 1241, 1255 (11th Cir. 2004). *See also Glatt v. Fox. Searchlight Pictures, Inc.*, 811 F.3d 528, 539 (2d Cir. 2016) ("assuming some questions may be answered with generalized proof, [class certification should be denied if they] are not more substantial than the questions requiring individualized proof").

Here, the PFAC alleges that Big Think violated the TCPA by calling Cunningham at least twice on a number that is registered on the DNC Registry. (Doc. 34, p. 3, ¶ 2). Such a claim only applies to calls to "a residential telephone subscriber." 47 C.F.R. § 64.1200(c)(2). In *Bank v. Indep. Energy Grp. LLC*, No. 12-CV-1369, 2014 U.S. Dist. LEXIS 141141, 2014 WL 4954618, at *6-7 (E.D.N.Y. Oct. 2, 2014), the Court, while analyzing a separate violation of the TCPA, acknowledged that applying a "more nuanced approach to the phrase 'residential telephone line' better comports with Congress's intent in enacting the TCPA and with common sense." The Court ultimately concluded that to apply as "residential," the telephone line should not only be registered with the phone company as "residential," but that the Court must also analyze whether the phone number had been held out to the public as a business number. *Id.* at *7-8. Making this determination would require the Court to analyze not only whether every single number was on the DNC Registry, but how each number was registered with the phone carriers, and whether the number was held out to the public as a business number.[2]

---

[2] This analysis is particularly relevant in this case because Big Think is engaged in arranging funding solely for businesses, not individual persons. (Doc. 34, p. 3, ¶ 2) ("Defendant initiated or caused to be initiated at least three text calls . . . for the purpose of encouraging Plaintiff to take out business loans through Defendant . . .").

Certification would also require an analysis into whether Big Think had consent to call the telephone numbers of every single class member. A "chorus of…courts faced with TCPA class actions…have found such individualized inquiries on the consent issue precluded class certification." *Hunter v. Time Warner Cable Inc.*, No. 15-CV-6445 (JPO), 2019 U.S. Dist. LEXIS 137495, 2019 WL 3812063, at * 28-29 (S.D.N.Y. Aug. 14, 2019) (collecting cases)).

Here, to assert the claims of the PFAC on a classwide basis would require individualized inquiries into whether each class member held his or her phone number out as a business number, and whether each class member consented to be called. Because these issues would result in a gaggle of mini-trials, the claims the Motion seeks to assert are not susceptible to classwide proof, and the proposed amendment would be futile. The Motion should be denied.

### 3. The class pled in the PFAC is an improper fail-safe class.

An improper fail-safe class is one "that requires individualized merits-based determinations to ascertain class membership." *Lindsay Transmission, LLC v. Office Depot, Inc.*, 2013 U.S. Dist. LEXIS 9554, *10 (E.D. Mo. Jan. 24, 2013); *Sauter v. CVS Pharm., Inc.*, No. 2:13-cv-846, 2014 U.S. Dist. LEXIS 63122, *22-23 (S.D. Ohio May 7, 2014). "A fail-safe class is one whose definition incorporates the elements of a successful legal claim, such that determining whether an individual or entity is a member of the class 'front-ends a merits determination on [the defendant's] liability.'" *JWD Auto., Inc. v. DJM Advisory Group LLC*, 218 F. Supp. 3d 1335, 1342 (M.D. Fla. 2016); *Sauter*, 2014 U.S. Dist. LEXIS at * 11; *Lindsay Transmission, LLC,* 2013 U.S. Dist. LEXIS at *10. "Such a class definition is improper because a class member either wins or, by virtue of losing, is defined out of the class and is therefore not bound by the judgment." *Sauter*, 2014 U.S. Dist. LEXIS at * 11; *Randleman v. Fidelity Nat'l Title Ins. Co.*, 646 F.3d 347, 352 (6th Cir. 2011). "This type of class definition is called a fail safe class because the class definition

precludes the possibility of an adverse judgment against class members; the class members either win or are not in the class." *Lindsay*, 2013 U.S. Dist. LEXIS 9554, at * 11 (internal quotations omitted) (quoting *Genenbacher v. CenturyTel Fiber Co. II*, 244 F.R.D. 485, 488 (C.D. Ill. 2007)). "A proposed 'fail-safe' class should not be certified because it is unfair to defendants, it prevents an adverse judgment being entered against plaintiffs, and it is unmanageable because the members of the class could only be known after a determination of liability." *Hicks v. T.L. Cannon Corp.*, 35 F. Supp. 3d 329, 357 (W.D.N.Y. 2014).

The elements of a claim under 47 U.S.C. § 227(c)(5) are: (1) two or more calls made; (2) within a 12-month period; (3) by or on behalf of the same defendant; (4) to a residential telephone number; (5) on the DNC Registry; (6) without prior consent. The PFAC purports to seek certification of persons who: (1) received two or more calls; (2) within a 12-month period; (3) from Big Think; (4) to their telephone numbers; (5) on the DNC Registry; (6) without their prior consent. (Doc. 34, ¶ 19). Classes are to be defined based on the facts, not the legal elements of a claim. If a person failed to meet the criteria identified in the PFAC, they would not only fail to have a valid claim under 47 U.S.C. § 227(c), *they would not be a class member at all*. Thus, the class members as defined in the Complaint "win or, by virtue of losing, . . . are not in the class and, therefore not bound by the judgment." *Sauter*, 2014 U.S. Dist. LEXIS at *11. Because the proposed class defined in the PFAC is an impermissible fail-safe class, the PFAC fails to plead a viable class, the PFAC is futile, and the Motion should be denied.

### C. If the Motion is granted, the amendment should not relate back to when the Complaint was filed.

The Motion seeks leave to assert claims on behalf of Cunningham and all individuals who received the same or similar telephone calls from Big Think from February 1, 2015 to the present.

(Doc. 34, ¶ 2, 17, 19). Pregnant in this request is the assumption that Cunningham believes the amendment should relate back to the date of the original Complaint (*i.e.*, February 1, 2019).

Fed. R. Civ. P. 15(c)(1)(B) states that an amendment to a pleading relates back to the date of the original pleading when "the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading."

Here, the Complaint alleged that Big Think violated the TCPA by calling the 1977 Number in January 2019 using an ATDS. (Doc. 1, ¶ 13). In contrast, the PFAC alleges that Big Think violated the TCPA by calling the 7262 Number in December 2020 when it was registered on the DNC Registry. (Doc. 34, p. 5, ¶¶ 10-13). Because the calls alleged in the PFAC do not arise "out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the" Complaint, the proposed amendment should not relate back, and the PFAC should be permitted, at most, to assert claims on behalf of a putative class of individuals who received calls in the four years prior to the amendment.

### III. CONCLUSION

For the reasons set forth above, the Motion should be denied.

Dated: June 1, 2021

Respectfully submitted,

THOMPSON HINE LLP

By: /s/Mendy Piekarski
Mendy Piekarski
335 Madison Avenue, 12th Floor
New York, New York 10017-4611
T: 212-344-5680 / F: 212-344-6101
Mendy.Piekarski@ThompsonHine.com

*Attorneys for Defendant*
*Big Think Capital Inc.*

## CERTIFICATE OF COMPLIANCE

Defendant certifies that on June 1, 2021, a true copy of the foregoing was served upon Plaintiff by email and first-class mail to the following address:

Aytan Y. Bellin
Bellin & Associates LLC
50 Main Street, Suite 1000
White Plains, NY 10606
aytan.bellin@bellinlaw.com

*Attorney for the Plaintiff*

    Dated: June 1, 2021                  Respectfully submitted,

                                              /s/Mendy Piekarski
                                              335 Madison Avenue, 12th Floor
                                              New York, New York 10017-4611
                                              T: 212-344-5680 / F: 212-344-6101
                                              Mendy.Piekarski@ThompsonHine.com

                                              *Attorneys for Defendant*
                                              *Big Think Capital Inc.*